IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| LINART RANDOLPH, #279485, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 3:10-162-RBH -JRM |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| WARDEN MCKIETHER BODISON, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner, Linart Randolph ("Randolph"), is an inmate at the South Carolina Department of Corrections serving a sentence of life imprisonment without parole for murder. Randolph filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 which was received by the Court on January 29, 2010. Respondent filed a return and motion for summary judgment on May 5, 2010. Because Randolph is proceeding *pro se*, an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on May 6, 2010 advising him of his responsibility to respond to the motion for summary judgment. Randolph filed a response on June 22, 2010.

1

## Background and Procedural History

On March 2, 2001, the body of Ronald Epps was found in a mobile home in Newberry County that was the residence of Randolph and his wife, Annette Randolph ("Annette"). He had been beaten to death with a hammer which was recovered at the scene. Randolph and Annette were charged with conspiracy to commit murder and murder. Trial commenced on October 29, 2001. Randolph was represented by Christopher Moran, Esquire and Annette was represented by Ray Wicker, Esquire. A motion for directed verdict was granted on the conspiracy charge. Randolph and Annette were both convicted of murder.

Randolph was represented on appeal by Harry T. Heizer, Jr., Esquire. The following issues were raised:

I. Did the trial judge err in allowing evidence of appellant's crack use, when the evidence served no purpose but to convince the jury of appellant's bad character?

II. Did the trial judge err in allowing the State to introduce the written statement of Annette Randolph during the presentation of the defense's case?

(Supp.App., 32).

The conviction was affirmed by the South Carolina Court of Appeals. *See* State v. Randolph, Unpub.Op.No. 2004-UP-607 (Ct.App. filed December 6, 2004) and (Supp.App., 4). Randolph's petition for a rehearing was denied on January 20, 2005. Randolph then filed a petition for writ of certiorari in the South Carolina Supreme Court asserting:

Did the Court of Appeals err in holding the admission of Petitioner's co-defendant's written statement by the State, during the defense case, was not improper?

The petition for writ of certiorari was denied by the South Carolina Supreme Court on March 22, 2006. (Supp.App., 2). The Remittitur was returned on March 23, 2006. (Supp.App., 1).

Randolph filed an application for post-conviction relief ("PCR") on June 28, 2006. (App., 404). An evidentiary hearing was held on March 22, 2007. M. Rita Metts, Esquire, represented Randolph. Randolph and Mr. Moran both testified. The PCR court issued an order of dismissal on May 10, 2007. (App., 496). A petition for writ of certiorari was filed on Randolph's behalf by the South Carolina Commission on Indigent Defense raising the following issue:

> Did the PCR court err by finding defense counsel was not ineffective for failing to object to the "hand of one is the hand of all" instruction where the trial court directed a verdict on the conspiracy charge in petitioner's joint murder trial with his wife, since there was no evidence petitioner was acting in concert, pursuant to an agreement, with his wife or anyone else at the time of the murder, especially where petitioner's wife could not even recall petitioner's whereabouts at the time the murder occurred in their home because of her extraordinary drug use?

The case was transferred to the South Carolina Court of Appeals which denied the petition for writ of certiorari on December 2, 2009. The Remittitur was returned on December 18, 2009.

### Grounds for Relief

In his present petition, Randolph asserts he is entitled to a writ of habeas corpus on the following ground:

**GROUND ONE:** The state court decision not finding counsel inept, and constitutionally ineffective under Strickland "vs" Washington was contrary to and objectively unreasonable to clearly established federal law as determined by the U.S. Supreme Court, and the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**SUPPORTING FACTS:** The petitioner and his wife were indicted for conspiracy to commit murder, and murder. At trial, during the direct verdict stage, the court found that the petitioner did not have the "MENS REA" to be in conspiracy with his wife to commit the crime of murder, and dismissed the the (sic) conspiracy count in the indictment (APP.P.220 L. 19-25 through APP.P. 222 L. 1-11). However during the jury instruction phase of the trial, the judge charged the jury on the hands of one is the hands of all (APP.P. 385 L. 23-25 THROUGH APP.P. 386 L. 1-22), and

3

counsel did not object to this charge when this charge illuminates agreement between parties, and petitioner was convicted basically for this jury instruction.

**Discussion**

In the memorandum attached to his petition, Randolph raises a single claim, i.e., his attorney was ineffective for failing to object to the trial court's jury instruction on accomplice liability ("the hand of one is the hand of all").  The undersigned concludes that Randolph is not entitled to relief.

Since Randolph filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 521 U.S. 320 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir.), *cert. denied,* 521 U.S. 371 (1998) and Green v. French, 143 F.3d 865 (4th Cir. 1998), *cert. denied*, 525 U.S. 1090 (1999).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has addressed procedure under § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000).  In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1).

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases .... A state- court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Court's] precedent.

4

* * *

> [A] state-court decision involves an unreasonable application of [the Supreme] Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of [the] Court's precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 1519-20. Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 1521.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) quoting Strickland, *reversed on other grounds*, 476 U.S. 28 (1986). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability

5

> sufficient to undermine confidence in the outcome.
>
> * * *
>
> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added).

Strickland at 694-95.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court must determine whether the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The court's analysis should center on whether the state courts properly applied the Strickland test. *See* Williams v. Taylor, 529 U.S. 362 (2000). ("Strickland test provides sufficient guidance for resolving virtually all ineffective assistance of counsel claims.")

At the PCR hearing, Randolph testified that trial counsel should have objected to the instruction on accomplice liability because the court had directed a verdict on the conspiracy charge. According to Randolph, "the Judge had gave a hands of one hands of all, which was illegal to do because the conspiracy count failed." (App., 459). Trial counsel testified that he did not feel it necessary to object to the instruction. (App., 484).

The PCR court mentioned the issue in the order of dismissal while summarizing the PCR testimony (App., 500), but did not directly analyze it. The court made a finding that counsel was not ineffective because Randolph had not shown error or prejudice. (App., 502-503).

Randolph seems to assert that the charge on accomplice liability was objectionable because

murder is identical to conspiracy. ("(I)f you couldn't prove the conspiracy how you going to prove the murder because they stated the same thing." (App., 459). Randolph's argument demonstrates a somewhat understandable, but erroneous, interpretation of South Carolina law.

Under South Carolina law a "conspiracy" is "a combination between two or more persons for the purpose of accomplishing an unlawful object or lawful object by unlawful means." S.C.Code Ann. § 16-17-410. The gravamen of the offense of conspiracy is the agreement or combination. State v. Sims, 377 S.C. 598, 606, 661 S.E.2d 122, 126 (Ct.App. 2008). On the other hand "'(m)urder' is the killing of any person with malice aforethought, either express or implied." S.C.Code Ann. § 16-3-10. Obviously, the elements of the two crimes are entirely different.

The instruction about which Randolph complains relates to accomplice liability. "Under the 'hand of one is the hand of all theory [of accomplice liability],' one who joins another to accomplish an illegal purpose is liable criminally for everything done by his confederate incidental to the execution of the common design or purpose." State v. Condrey, 349 S.C. 184, 194, 562 S.E.2d 320, 324 (Ct.App. 2002). "Under the accomplice liability theory, 'a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime though some overt act.'" State v. Langley, 334 S.C. 643, 648-649, 515 S.E.2d 98, 101 (1999) (quoting State v. Austin, 299 S.C. 456, 459, 385 S.E.2d 830, 832 (1989). Thus, a person can be found guilty as an accomplice even though there is no common design (i.e., conspiracy) if he is present and intentionally aids and abets the perpetrator. The fact that the trial court granted a directed verdict on the conspiracy charge, therefore, does not necessarily preclude an instruction on accomplice liability.

The evidence at trial showed that the victim was in the Randolph's residence, the victim was

7

in possession of a large amount of cash, the Randolph's argued over money to buy crack cocaine, and the next day the Randolph's shared an amount of cash. It was unclear who struck the fatal blows but both Randolph and Annette were present. Under these circumstances an instruction on accomplice liability was appropriate, and there was no error by trial counsel in failing to object.

### Conclusion

Based on a review of the record, it is recommended that Respondent's motion for summary judgment be **granted**, and the petition **dismissed** without an evidentiary hearing.

_____
Joseph R. McCrorey
United States Magistrate Judge

September 14, 2010
Columbia, South Carolina

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).